UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-CR-6309-SEITZ

UNITED STATES OF AMERICA

v.

DOREEN RUSSO, et al.

## MOTION TO CONSOLIDATE THE PLEA AND SENTENCING

Defendant DOREEN RUSSO has reached an agreement with the United States regarding the resolution of this case. A change of plea hearing is scheduled for March 8, 2002 at 11:00 a.m.

The government will be filing a superseding information charging one count of accessory after the fact, 18 U.S.C. section 3, in lieu of the pending indictment. Mrs. Russo will plead guilty to that charge pursuant to a written plea agreement that delineates the guideline computation, which results in a final offense level of 8, no criminal history points, and a corresponding guideline range of 0-6 months. As set forth in the plea agreement, the government will recommend a sentence of three years *non-reporting* probation. The parties have also stipulated in the plea agreement that the appropriate amount of restitution is $130,000. (The superseding information and plea agreement with attachment A are appended to this motion.)

Thus, the parties have no dispute regarding the applicable guideline computation, which allows for a sentence of probation. The government is not seeking incarceration. Indeed, the government is affirmatively stating to the court that it believes Mrs. Russo

-1-

should receive a sentence of three years *non-reporting* probation. Mrs. Russo is Criminal History Category I. Mrs. Russo submits that the court should proceed to sentencing immediately upon accepting the plea, without requiring that the probation department unnecessarily expend resources to conduct a pre-sentence investigation.

The Federal Rules of Criminal Procedure permit the court to sentence without a PSI so long as "the Court finds that the information in the record enables it to exercise its sentencing authority meaningfully under 18 U.S.C. Section 3553 and the Court explains this finding on the record." Rule 32(b)(1), Fed.R.Crim.P.[1] This is such a case.

Doreen Russo is 54 years old. She was born in Brooklyn, New York, attended P.S. 90, Jamaica Vocational, Richmond Hill High School, and Queens Beauty School in Queens, New York, where she was employed for 4 years as a hair dresser before getting married in 1968 to her husband Joseph Russo. Married for more than 30 years, she has three grown children and seven grandchildren. She and her husband have resided in South Florida since 1979. Their current address is 11255 SW 93rd Court, Miami, Florida 33176, a single family home which Mrs. Russo owns together with her parents, Peter and Teresa Julian. She does not drink, smoke or use drugs. She is in good health. Since the indictment, she has been free on bond without incident.

Given the nature of the offense -- accessory after the fact to her husband's criminal offense -- and her unassuming background, there is little reason to burden the Probation

---

[1] Rule 32(b)(1) provides that "a presentence investigation and report, or other report containing information sufficient for the court to enter an order of restitution, as the court may direct, shall be required in any case in which restitution is required to be ordered." Attachment A to the plea agreement constitutes the required "report," as it sets forth all of the facts relevant to the restitution issue. Moreover, the parties agree that the correct amount of restitution is $130,000.

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BOULEVARD, SUITE 1300, MIAMI, FLORIDA 33131 ● (305) 371-6421

Office with the task of computing the guidelines and compiling Mrs. Russo's vital statistics. To be sure, the Probation Office routinely turns to the prosecutor and case agent for the pertinent data in formulating the P.S.I. The U.S. Attorney's Office and the F.B.I. have already conducted a thorough investigation into Mrs. Russo's conduct and background and are not seeking incarceration or post-sentencing supervision for this 54-year old grandmother of seven. If this court is inclined to follow the government's recommendation, neither the Bureau of Prisons nor the Probation Office will be burdened in this matter following sentencing. The preparation of a pre-sentence investigation report at this point would be a superfluous exercise.

Accordingly, Mrs. Russo requests that this court accept her change of plea on March 8, 2002 and impose sentence that same day.

Undersigned spoke to AUSA Brian McCormick and Diana Fernandez who advised that the government does not join in this motion.

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
(305) 371-6421    fax (305) 358-2006
E-mail: Hsrebnick@black-law.com

By: _____
HOWARD M. SREBNICK, ESQ
Florida Bar Number 919063
Counsel for Doreen Russo

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on ___3/5___, 2002 a true and correct copy of the foregoing was furnished by fax and mail to:

Brian McCormick, Esq.
Diana Fernandez, Esq.
Assistant United States Attorneys
500 East Broward Boulevard, 7th Floor
Fort Lauderdale, Florida 33394-3002

Jayne Weintraub, Esq.
100 S.E. 2nd Street, Suite 3550
Miami, Florida 33131
counsel for co-defendant Joseph Russo

By: _____
**HOWARD M. SREBNICK, ESQ.**
Attorney for Doreen Russo

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BOULEVARD, SUITE 1300, MIAMI, FLORIDA 33131 ● (305) 371-6421

JBM:DF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 6309-CR-SEITZ(S)(S)(S)
18 U.S.C. 3

UNITED STATES OF AMERICA,
        Plaintiff,

v.

DOREEN RUSSO,
        Defendant.
_____/

## SUPERSEDING INFORMATION

The United States Attorney charges that:

On or about October 10, 2000, in the Southern District of Florida, and elsewhere, the defendant,

DOREEN RUSSO,

knowing that an offense against the United States has been committed, that is, engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957, did receive, relieve, comfort and assist the offender, co-defendant Joseph Russo, in order to hinder and prevent the offender's apprehension, trial and punishment.

All in violation of Title 18, United States Code, Section 3.

GUY A. LEWIS
UNITED STATES ATTORNEY

J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY

DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ(S)(S)(S)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DOREEN RUSSO,

        Defendant.
_____/

## PLEA AGREEMENT

The United States of America and DOREEN RUSSO (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to waive indictment and plead guilty to a one-count information, which count charges the defendant with being an accessory after the fact in a violation of Title 18, United States Code, Section 3.

2. The United States agrees to seek dismissal of the second superseding indictment as to this defendant including the forfeiture count, after sentencing.

3. The United States and defendant agree that the statement of facts attached as Attachment A sufficiently establishes that the defendant is guilty beyond a reasonable doubt of being an accessory afer the fact as set forth in the superseding information filed pursuant to this plea agreement.

4. The defendant is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the

applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guidelines range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

5. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 5 years, followed by a term of supervised release of up to three years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. The defendant also agrees to the entry of a restitution order in the amount of $130,000. The defendant agrees that she is jointly and severally liable with her husband, codefendant Joseph Russo, for this amount.

6. As part of this plea agreement, the defendant consents to the entry of a forfeiture order/restitution order in the amount of $130,000, against Joseph Russo, her husband. Furthermore, defendant consents to the use of her residence or any other jointly held property as husband and wife (tenancy by the entirety) as the

2

source of funds to satisfy the $130,000. In the event that the defendant is unable to satisfy the forfeiture order/restitution order prior to sentencing, defendant agrees, along with her husband, to the entry of a forfeiture judgment/restitution order in the amount of $130,000.

7. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 5 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

8. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.

9. The United States and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

    a. That the base offense level pursuant to 2X3.1, would be 6 levels lower than the offense level for the underlying offense;

    b. That the underlying offense is engaging in monetary transactions, in violation of Title 18, United States Code, Section 1957;

3

    c.    That the offense level for Title 18, United States Code, Section 1957, pursuant to 2S1.1, is 8 plus 10, for an amount of money in excess of $120,000, resulting in a total of 18;

    d.    That the adjusted base offense level would therefore be 12;

    e.    That the defendant should receive a two-level decrease as a minor participant in the offense, pursuant to U.S.S.G. 3B1.2;

    f.    That provided the defendant complies with the requirements set forth in paragraph 10, below, the defendant should receive a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1; and,

    g.    The parties therefore agree the applicable guideline level should be level 8.

    10.    The defendant understands that any recommendation made by the government is not binding on the Court and the Court is free to accept or reject them. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. The United States also agrees to recommend that no fine be imposed in light of the agreed upon restitution. However, the United States will not be required to make this sentencing recommendation if the

4

defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

11. The United States agrees that it will not recommend an upward departure from the guidelines as determined by the Court based upon the nature of the offense, the defendant's relevant offense conduct, or the background of the defendant.

12. The United States agrees to recommend to the Sentencing Court that the defendant should receive a two-level decrease as a minor participant in the offense, pursuant to U.S.S.G. 3B1.2.

13. The United States agrees to recommend that the defendant be sentenced to three (3) years non-reporting probation, and, that no fine be imposed in light of the agreed upon forfeiture/restitution.

14. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which that

5

sentence was determined, unless (1) the sentence exceeds the maximum permitted by statute, (2) the sentence is the result of an upward departure from the guideline range the Court establishes at sentencing, and/or (3) the Court decides not to follow one or more of the sentencing recommendations made pursuant to paragraphs 9-12, above. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. The defendant understands that, although the defendant will be sentenced in conformity with the Sentencing Guidelines, by this agreement the defendant waives the right to appeal the sentence on the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

15. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and

6

acknowledges, as previously acknowledged in paragraph 4, above, that the defendant may not withdraw her plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

16. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

GUY A. LEWIS
UNITED STATES ATTORNEY


Date: _____          _____
                         J. BRIAN McCORMICK
                         ASSISTANT UNITED STATES ATTORNEY


Date: _____          _____
                         DIANA L.W. FERNANDEZ
                         ASSISTANT UNITED STATES ATTORNEY


Date: _____          _____
                         DOREEN RUSSO
                         DEFENDANT


Date: _____          _____
                         HOWARD SREBNICK
                         ATTORNEY FOR DEFENDANT


7

## ATTACHMENT A

IF THIS MATTER WERE TO PROCEED TO TRIAL, THE GOVERNMENT WOULD PROVE THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT THROUGH WITNESSES' TESTIMONY, SEARCH WARRANT EVIDENCE AND FINANCIAL RECORDS OBTAINED THROUGH SUBPOENAS. THE PARTIES FURTHER AGREE THAT THE EVIDENCE THAT WOULD BE OFFERED BY THE GOVERNMENT ESTABLISHES THAT THE DEFENDANT POSSESSED THE NECESSARY KNOWLEDGE THAT THE PROCEEDS INVOLVED IN THE VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1957, WERE CRIMINALLY DERIVED AND THAT THE DEFENDANT'S KNOWLEDGE OF THIS IS BASED UPON "WILLFUL BLINDNESS," IN THAT SHE CONSCIOUSLY AVOIDED OBTAINING ACTUAL KNOWLEDGE THAT THE PROCEEDS INVOLVED IN THE FINANCIAL TRANSACTION WERE CRIMINALLY DERIVED.

THIS EVIDENCE WOULD SHOW THE FOLLOWING SPECIFIC FACTS:

DOREEN RUSSO BEGAN HER INVOLVEMENT IN THIS CASE BY ASSISTING HER HUSBAND WHILE HE WAS IN PRISON AND ON SUPERVISED RELEASE. IN 1997, DOREEN RUSSO BECAME A PARTNER WITH GRACE MAMONE IN A CHECK CASHING STORE KNOWN AS CHECK CASHING UNLIMITED, LOCATED IN MARGATE, FLORIDA. THE TWO WOMEN WERE NOMINEES FOR THEIR HUSBANDS, JOHN MAMONE AND JOE RUSSO, WHO WERE CONVICTED FELONS AND THUS PRECLUDED FROM OBTAINING A LICENSE FROM THE STATE OF FLORIDA. THE WIVES HELD THE LICENSE TO THE STORE UNTIL JOHN MAMONE TURNED THE STORE OVER TO CODEFENDANT FRED MORGENSTERN IN SUMMER 1999. THE WIVES WERE NOT INVOLVED IN MANAGING THE STORE. FROM ABOUT 1997 UNTIL EARLY 2000, THE STORE WAS USED BY CERTAIN MEMBERS OF THE ENTERPRISE TO LAUNDER GAMBLING AND LOANSHARK PROCEEDS, AS WELL AS AT SOME POINT, PROCEEDS FROM THE CHEMICAL TRUST MAIL/WIRE FRAUD THAT ORIGINATED IN GREENVILLE, SOUTH CAROLINA.

DOREEN RUSSO'S INVOLVEMENT RELATES TO OBTAINING SOME OF THE PROCEEDS OBTAINED FROM THE CHEMICAL TRUST FRAUD. THIS FRAUD SCHEME INVOLVED INDUCING PEOPLE TO INVEST MONIES, INCLUDING MANY WHO INVESTED THEIR PENSION OR 401K, WITH A COMPANY CALLED CHEMICAL TRUST. THE SCHEME WAS ORIGINATED BY VIRGIL WOMACK OF SOUTH CAROLINA. WOMACK DIRECTED VARIOUS SALESMEN TO INDUCE VICTIMS TO INVEST MILLIONS OF DOLLARS IN CHEMICAL TRUST WITH THE FALSE PROMISE THAT ALL THE FUNDS WERE GUARANTEED BY A BONDING COMPANY. THE SCHEME WAS A PONZI SCHEME BECAUSE ANY PAYMENTS MADE TO INVESTORS WAS MADE FROM FUNDS RECEIVED FROM NEW INVESTORS. APPROXIMATELY 1,200 INVESTORS WERE VICTIMIZED WITHIN A SIX MONTH PERIOD OF TIME.

DURING THIS SOUTH CAROLINA FRAUD, WOMACK BEGAN SENDING CHECKS RECEIVED FROM THE VICTIMS TO SOUTH FLORIDA, WHERE THEY WERE DEPOSITED BY CODEFENDANT FRED MORGENSTERN AND HIS ASSOCIATES IN SEVERAL SOUTH FLORIDA BANKS.

ATTACHMENT A
PAGE 2

IN LATE 1999, JOHN MAMONE OBTAINED SEVERAL CHEMICAL TRUST INVESTOR/VICTIM CHECKS FROM CODEFENDANT FRED MORGENSTERN, TOTALING APPROXIMATELY $800,000. MAMONE DEPOSITED THESE CHECKS INTO TWO MONEY MARKET ACCOUNTS AND THEN BEGAN WRITING CHECKS AND TRANSFERRING MONEY TO OTHER CO-CONSPIRATORS. ON JANUARY 12, 2000, MAMONE WIRE TRANSFERRED $100,000 TO THE ACCOUNT OF DOREEN RUSSO. ON APRIL 10, 2000, MAMONE SENT A CHECK TO DOREEN RUSSO IN THE AMOUNT OF $30,000, WHICH SHE THEN DEPOSITED INTO HER ACCOUNT. DOREEN RUSSO THEN ISSUED A CHECK FROM HER ACCOUNT TO THE EX-WIFE OF AN INCARCERATED INMATE IN THE AMOUNT OF $100,000. SHE ISSUED A CHECK FOR $30,000 TO A REAL ESTATE DEVELOPER IN COCONUT GROVE AS DOWN PAYMENT TO PURCHASE TWO LUXURY CONDOMINIUMS. THESE MONIES WERE DIRECTLY TRACEABLE TO THE CHEMICAL TRUST FRAUD FUNDS. OVER THE NEXT FEW WEEKS, DOREEN RUSSO INVESTED ANOTHER $110,000 OF HER HUSBAND'S FUNDS IN THIS PROJECT. IN ACTUALITY, THESE WERE PURCHASES ON BEHALF OF HER HUSBAND, WHO INTENDED TO PURCHASE THESE UNITS WITH HIS PARTNER, JOHN MAMONE, WHO WAS ALSO USING HIS WIFE AS HIS NOMINEE.

IN SUMMER, 2000, JOE RUSSO BECAME CONCERNED THAT JOHN MAMONE WAS ABOUT TO BE INDICTED IN THE INSTANT CASE. AT THAT TIME, JOE RUSSO WITHDREW FROM THE INVESTMENT, AND THEREAFTER ABOUT $140,000 WAS SENT BY CHECK TO DOREEN RUSSO BY THE CONDOMINIUM DEVELOPER. DOREEN RUSSO IMMEDIATELY USED THE FUNDS TO PAY OFF A SECOND MORTGAGE ON THEIR HOME, WHICH PREVIOUSLY HAD BEEN TITLED IN THE NAME OF DOREEN RUSSO'S PARENTS. THIS MONEY WAS DIRECTED IN SUCH A MANNER TO AID HER HUSBAND BY HINDERING THE IRS AND FBI FROM FOLLOWING THE MONEY TRAIL.